OPINION
GARY P. SULLIVAN, Chief Justice.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On April 30, 1993, J.B. was born to Janet Escarcega and Merle Billie [1] in New Mexico. Janet is an enrolled member of the Fort Peck Assiniboine Sioux Tribes. Merle is an enrolled member of the Navajo Tribe. Shortly after the birth of J.B., Janet left New Mexico with J.B. and returned to Wolf Point, MT. Following her return to Wolf Point, Janet allegedly refused to grant Merle visitation and Merle responded by filing a Petition (Custody file # 332) on July 28, 1994, in the Fort Peck Tribal Court, to review child custody and child support. Notice of the hearing was sent to Merle in New Mexico by certified mail. Either Merle failed to pick up the letter or the letter was never presented to him. As a result, service was ineffective. The notice was then published in the Wotanin Wowapi, the official newspaper for the Tribes, for the required time pursuant to Title VIII CCOJ 2000 § 102(b)(4). Merle failed to appear for the hearing and as a result, Janet was awarded full custody of J.B. pursuant to the Court’s order of November 10, 1994.
The record is sketchy regarding the years between November 1994 and July 1998. On August 13, 1998, Merle filed a second petition (Juv-Cust #055) in the Fort Peck Tribal Court, contending that Janet was less than co-operative in his attempts to visit J.B. Specifically, Merle alleged that he had been traveling to Wolf Point from Gallup, NM, each summer since 1994 to visit with J.B. and that in 1998 he had “experienced resistance in taking (his) son for a little vacation (1 week), as well as his school shopping.” The record is silent as to Janet’s response.
On September 9, 1998, the Court held an initial hearing on the petition. Both parties appeared pro se for the hearing. After the Tribal Judge read the custody *311 petition in open court and questioned the parties, he found probable cause to hear the petition on the merits. He ordered drug and alcohol evaluations, as well as home studies, for both Janet and Merle. He also set the matter for hearing for October 8, 1998. On September 16, 1998, Terrance L. Toavs, Esq., of Wolf Point, MT, filed a Notice of Appearance on behalf of Merle. On September 23, 1998, Mr. Toavs requested that the Court issue a written order for the required evaluations due to the fact that the Navajo Nation would not act without a written court order. The court issued its order on the same day. On October 6, 1998, Merle moved for a continuance contending that the Navajo Nation could not complete the required evaluations in time for the October 8th hearing. Janet appeared pro se at the October 6, 1998 hearing and opposed the motion to continue. She also informed the court that she had filed a petition (Child Support Case # 98-9-178) to determine child support. At that time Mr. Toavs made an oral motion to consolidate the two cases because 1) the trial court had authority to address the child support issue along with the pending custody petition and 2) in the interests of efficiency, Merle should not have to needlessly travel the distance between Montana and New Mexico to attend hearings in two cases. On or about October 27, 1998, Mr. Toavs sent Janet a letter with a copy of a Stipulation and Order consolidating Case No. 98-9-178 with Case No. JUV-055 for her concurrence and signature. Janet stated that she was apprehensive concerning the stipulation and did not sign the order. There is no evidence in the record (including the transcript of the hearing on December 4th) that the Court consolidated the two cases[2].
On December 3, 1998, Merle faxed a handwritten letter (dated October 8, 1998) from the Navajo Nation to an unknown destination. Handwritten comments on this letter indicate that the letter had been previously mailed, but had been returned. This letter appears in the Court file. It contains a cursory history of his relationship with Janet, including inflammatory statements and derogatory information regarding Janet’s past. On December 3, 1998, Merle’s drug and alcohol evaluation and home study were filed with the Fort Peck Tribal Court. Also on December 3, 1998, Janet retained Carroll James DeCo-teau, a duly licensed Lay Counselor of the Fort Peck Tribes, to represent her in the December 4, 1998 healing.
At the custody hearing on December 4th, the Tribal Court determined that, based upon all of the evidence, it would be in best interest to have regular contact and visitation with his father and other paternal relatives. The Tribal Court stressed the importance of “knowing one’s roots” as well as allowing J.B. to learn about his Navajo heritage. The order also states each parent should have the right to participate in the upbringing of J.B. The Court went on to grant joint custody to Janet and Merle. The Court determined that J.B. would be with Janet during the school year and with Merle during the summer months. The Court defined “summer months” as beginning no later than one week after school was out and continuing until one week before each school year. The Court further ordered that Merle would pay child support of $75 per month during those months that he did not have custody of J.B. Mr. Toavs prepared the written order[1] and Mr. DeCoteau signed the order on December 10, 1998.
*312 Janet contends that she did not view the Order prior to signing and disagrees with portions of the Order. On January 12, 1999 Janet filed a Petition for Review of Case No.JUY-055.

ISSUES PRESENTED

First, Janet contends that Merle does not specifically state the manner in which he is requesting the Court to review custody. Janet is unsure whether Merle is seeking full custody or joint custody. Therefore, she does not know how to properly prepare her arguments.
Secondly, Janet states that she was denied due process of law when certain documentary evidence was filed with the Court one day prior to the hearing and she was not aware of this evidence until during and even after the trial.
Thirdly, Janet complains that the two separate petitions (One for custody filed by Merle and one for child support filed by Janet) were consolidated by the Court without notice to Janet and without benefit of a written order and that such consolidation, without notice, also deprived her of due process of law.
Finally, Janet alleges that she was denied due process, specifically, the right to be heard, when, after the trial, her counsel requested a complete copy of the file and it was noted that there were no documents whatsoever from the Petition for Child Support (Juv.055), however, all of the documents from Merle’s custody petition were in the record (98-9-178). Notwithstanding this omission, the Court issued an order, ostensibly in the “best interests” of the child. Janet asks, “How could that be done when they did not hear her petition?” STANDARD OF REVIEW
Our Tribal Court has broad discretion in the determination of child custody and support issues. We will not overturn the Tribal Court’s judgment based upon factual findings unless a review of the entire record shows that such judgment was not supported by substantial evidence, (Title II CCOJ 2000 § 204), or we find that the Court abused its discretion. (Tribes v. Adams, FPCOA # 209), (“{Court of Appeals} will not set aside the factual findings of the Tribal Court, or substitute its judgment for such factual findings, absent an abuse of discretion”). Whether Janet’s due process rights have been violated is a question of law, which we review de novo. (Title II CCOJ 2000 § 204)

DISCUSSION

At the outset we note that the Tribal Court’s order is completely void of any factual findings. After reciting the time, date, place of hearing, and the appearances of counsel, the Court states:
“The Court, having found jurisdiction to be proper herein and having considered the evidence and the records on file in this matter, hereby enters the following order: ...”
The Court then proceeds to issue its determination of custody, visitation, support and “contact by telephone and mail” (See paragraphs 1 through 4, respectively). The entire order is comprised of the Court’s determination and judgment, without any express factual findings.
Merle contends that, notwithstanding the absence of factual findings in the Court’s order, the Court did set forth a factual basis for its order from the bench. First, he points to the stipulation of the parties during trial that both were in agreement that J.B. should have a relationship with his father. Merle relies heavily on the fact that Judge Christian “entered the findings and conclusions in part as follows:”
*313 “Okay. I considered all the witnesses that testified today. The documents. And I know it’s essential for an Indian child to know his roots. Nowadays, it’s essential. That he knows where he comes from.” (Transcript of trial as quoted in Merle’s Supplemental Brief @ page 4.)
Judge Christian goes on to identify “the problem” as the distance between the two parents, Merle living in New Mexico and Janet living in Montana. Merle further contends that the Court found that J.B. “talks with his father on the telephone and did have a good time with his father during their visits” and that the child “wanted and needed to be bonded with his father.” Still further, “the Court specifically found that Joseph needs to know the ‘southern side’ of his family.” (See Merle’s Supplemental Brief @ page 5.) We assume that by “southern side” the Court meant that J.B. needed to know' his Navajo heritage. While each of these statements may bear truth, we do not believe they meet the statutory requirements for a proper determination of child custody. It is well settled that the paramount consideration in child custody matters is “the best interests of the child”. Title X CCOJ 2000 § 304(b) states:
“In determining the best interests of the child, the Court shall consider the relative ability of the parents to provide adequate food, clothing, shelter, medical care, love and emotional support and day-to-day supervision. The Court shall also take into account the desires of the child. Difference in financial means alone shall not be the deciding factor.”
In a recent opinion, this Court set forth the standard for Tribal Court custodial orders:
“To comport with the requirements of § 304(b), our Tribal Courts must make findings that reflect the factual basis for their ‘bottom line’ decisions. In doing so, the Court should set forth the occasion that brings the matter to the Court’s attention (i.e. a non-custodial parent’s petition for custody, etc.), brief basic facts about the children in controversy, a brief history of the living conditions and environment of those children immediately prior to the matter coming before the Court, the legal custodial status of the children immediately prior to the pending petition, as much relevant information regarding the adult litigants as is available, as well as all of the elements of ‘best interests of the child’ set forth in as much detail as necessary to place the litigants on notice of how and why the Court made its decision.” Owens v. Matthews, FPCOA # 336 (2000)
The Order from the December 4, 1998, hearing fails to reflect whether the Court did, in fact, consider “the relative ability of the parents to provide the basic physical, emotional and financial elements of ‘best interests of the child’. Indeed, the Tribal Court ordered Merle to pay $75 per month child support during those months that he does not have physical custody of J.B. However, the Court does not state whether Janet is to pay Merle during her noncustodial months. Nor did the Court detail the relative financial abilities of the parents. If either parent were to petition for modification of this Order, upon what basis would the Court then hearing the matter establish whether there has been a “substantial change of circumstances”? Inasmuch as this Order is silent as to the “physical, emotional and financial’ conditions immediately preceding, and at the time of, its order, how could anyone determine whether there had been a ‘change of circumstances’ at any time? Further, the Order fails to state whether J.B. is sufficiently mature as to warrant listening to *314 J.B. regarding his desires as to his living arrangements. The Order also fails to state whether J.B., if he was sufficiently mature, expressed a custodial preference and if so, whether the Court took that stated preference into consideration before making its ultimate custodial order. Finally, the Order also fails to state how much of a role, if any, the relative financial means of the parents played in making its final order. It is obvious that the Order appealed from is woefully short of the mark set by Owens and cannot stand.
In addition to the dearth of factual findings, we are equally troubled by Janet’s due process claims. The receipt of Merle’s faxed letter into the Court file, as well as the Home Study report, just one day prior to trial, coupled with Janet’s allegation that she did not know of the letter until after the trial and did not know the contents of the Home Study until the day of the trial, are very troubling. It is also disconcerting to note that our Tribal Court failed to require Merle to expressly state the type of relief (i.e. “sole physical custody”, “joint legal custody”, etc.) he was requesting, not to mention the fact that the Court consolidated two separate petitions without benefit of a written order or other, more permanent, memorial. We also noted that Janet and Merle were never married; yet we found no reference regarding the establishment of paternity.

CONCLUSION

As stated, it appears that all of Janet’s claims have merit. However, we set aside the Order from the December 4, 1998, hearing solely on the basis of Tribal Court’s failure to meet the standards set forth in Oivens. The matter is remanded to the Tribal Court with instructions to conduct another hearing, after which a custodial order shall be prepared in strict compliance with § 304(b) and Owens.
CONCUR: GARY M. BEAUDRY, Associate Justice, GERARD M. SCHUSTER, Associate Justice.

. There appears to be no dispute regarding the paternity of J.B., although there is no record that paternity was ever established.

. It should be noted that the Court alluded to the consolidation at the October 6th hearing, however, no formal action was taken. Also, Mr. DeCoteau did question Janet on direct regarding her petition for support at the December 4th hearing.